*Whitney Wheeling, et al. v. Selene Finance LP, et al.* No. 2128, September Term 2017
Opinion by Kehoe, J.

**REAL PROPERTY – SELF HELP – THREATENING TO TAKE POSSESSION OF PROPERTY**

Real Property § 7-113(b)(2)(ii) permits a party to use non-judicial self-help to gain possession of residential real property if, and only if, the party is (1) a party claiming the right possession, as that term is defined in the statute; (2) reasonably believes the resident has abandoned or surrendered possession of the property; (3) has a basis for that reasonable belief based on a reasonable inquiry into the occupancy status of the property; (4) provides notice to the resident(s) of the property as provided in subsection (c) of the statute; and (5) receives no responsive communication to that notice within 15 days after the later of posting or mailing the notice as required by subsection (c) of the statute.

Subsection (d) of Real Prop. § 7-113 provides a cause of action for violations of subsection (b), and allows a resident to recover (i) possession of the property, if no other person then resides in the property; (ii) actual damages; and (iii) reasonable attorney's fees and costs.

The remedies of subsection (d) are available to a resident only when the party seeking possession locks a protected person out of the property, intentionally terminates or diminishes utility, water and sewer and similar services to the property, or takes any other action which deprives a protected resident of actual possession of the property. "Any other action" could include posting an abandonment notice without first conducting the "reasonable inquiry" required by subsections (b) and (c) of § 7-113 if, as a result of abandonment notice, a protected person vacates the property.

The operative complaint in this case alleged that defendants Selene Finance and Gina Gargeu did not conduct a reasonable inquiry into the occupancy status of the properties of the plaintiffs, Eric and Whitney Wheeling, and Joanne Rodriguez, before posting an abandonment notice. Further, Selene Finance was not a "party claiming the right of possession" as to the Wheelings because it had not initiated foreclosure proceedings against the Wheelings' property. However, neither the Wheelings nor Rodriguez were actually deprived of their property nor did the complaint allege that Selene Finance and Gargeu locked them out, terminated or diminished utility, water and sewer and similar services, or took any other action which deprived them of actual possession. The statutory cause of action of § 7-113(d) does not extend to them.

**MARYLAND CONSUMER PROTECTION ACT – PLEADING DAMAGES**

The Maryland Consumer Protection Act ("MCPA") (codified in Commercial Law § 13-101 *et seq*.) prohibits unfair, abusive, and deceptive trade practices in the collection of consumer debts. Com. Law § 13-303. The general rule for pleading damages, pursuant to Md. Rule 2-203(b) provides that "[e]ach averment of a pleading shall be simple, concise, and direct. No technical forms of pleadings are required. A pleading shall contain only such statements of fact as may be necessary to show the pleader's entitlement to relief or ground of defense." However, the MCPA contains a heightened pleading requirement for claims made under that statute, in that damages for emotional distress must be accompanied by observable physical manifestations. *See Sager v. Housing Commission of Anne Arundel County*, 855 F. Supp. 2d 524, 548–49 (D. Md. 2012).

In their amended complaint, appellants alleged that they suffered "emotional damages and losses with physical manifestations such as fear (of losing their home), anxiety (with the threat of eviction through no fault of their own), [and] anger." Additionally, appellants alleged that they "incurred legal fees to know her rights as a former owner of the property based on Selene's and Gargeu's deceptive eviction threats[.]"

While these allegations may have satisfied the general pleading requirement of Md. Rule 2-203(b), they did sufficiently plead any observable physical manifestations of their emotional distress. The operative complaint did not allege that appellants manifested any observable physical manifestations of the emotional distress caused by Selene. Rather, the allegations regarding emotional distress amount to nothing more than assertions that Selene's actions upset them. The MPCA requires more in order for a complaint to survive a motion to dismiss for failure to state a cause of action.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2128

September Term, 2017

_____

WHITNEY WHEELING, ET AL.

v.

SELENE FINANCE LP, ET AL.

_____

Kehoe,
Berger,
Reed,

JJ.

_____

Opinion by Kehoe, J.

_____

Filed: May 29, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

In 2013, the General Assembly enacted Md. Code, § 7-113 of the Real Property Article to restrict the use of self-help in certain kinds of residential evictions. Eric Wheeling, Whitney Wheeling, and Joanne Rodriguez filed suit in the Circuit Court for Baltimore City against Selene Finance LP and Gina Gargeu (doing business as Century 21 Downtown), alleging that they had violated § 7-113 in their efforts to obtain possession of two residential properties. The Wheelings and Rodriguez also asserted that Selene's actions violated the Maryland Consumer Protection Act (the "MCPA"), codified at Md. Code, § 13-101, *et seq.*, of the Commercial Law Article. Selene and Gargeu filed motions to dismiss appellants' amended complaint on the basis that it failed to state a cause of action. The circuit court granted both motions. Appellants noted this timely appeal and raise three issues, which we have rephrased:

> 1. Did the circuit court err in ruling that appellants failed to plead a claim pursuant to the statutory cause of action established by Real Prop. § 7-113?
>
> 2. Did the circuit court err in ruling that appellants failed to plead a claim under the MCPA?
>
> 3. Did the circuit court err in ruling that appellants failed to adequately plead that they suffered actual injuries as a result of Selene's and Gargeu's actions?

Although we see things a bit differently than did the circuit court, we will affirm its judgment. The amended complaint alleges facts which, if proven, establish that Selene and Gargeu violated § 7-113. However, the cause of action established by the statute extends only to cases in which a defendant has locked the plaintiff out of the property, intentionally

terminates or diminishes utility, water and sewer and similar services to the property, or takes any other action which deprives a resident of actual possession of the property. The amended complaint does not assert that any of these things happened in this case. Assuming for purposes of analysis that Selene's actions violated the MCPA, the amended complaint fails to allege damages with the specificity required for private causes of action under that statute.

## Background

### *The Wheeling Claim*

Donna Poole owns a residential property in Anne Arundel County. At the time the events discussed herein took place, Eric and Whitney Wheeling, along with their children, were tenants on the property. We will refer to this property as the "Wheeling property." Prior to the Wheelings' tenancy, Poole purchased the property through a mortgage loan with CitiMortgage, Inc. When Poole defaulted on that loan in 2013, the loan was acquired by Christiana Trust, as trustee for Normandy Mortgage Loan Trust Series 2013-9.

Selene Finance LP is a mortgage lender and servicer licensed to operate in Maryland. Selene acted as Normandy Mortgage's servicer for Poole's mortgage. On May 15, 2015, Selene posted a notice on the Wheeling property in accordance with Real Prop. § 7-113(c). The notice stated:

> **IMPORTANT NOTICE ABOUT EVICTION**
> A PERSON WHO CLAIMS THE RIGHT TO POSSESS THIS PROPERTY BELIEVES THAT THIS PROPERTY IS ABANDONED. IF YOU ARE CURRENTLY RESIDING IN THE PROPERTY, YOU MUST IMMEDIATELY CONTACT:

2

Selene Finance
NAME

9990 Richmond Avenue, Suite 400 S.
Houston, TX 77042
ADDRESS

(877) 768-3759
TELEPHONE

*5/15/15*
DATE OF THIS NOTICE

IF YOU DO NOT CONTACT THE PERSON LISTED ABOVE WITHIN 15 DAYS AFTER THE DATE OF THIS NOTICE, THE PERSON CLAIMING POSSESSION MAY CONSIDER THE PROPERTY ABANDONED AND SEEK TO SECURE THE PROEPRTY, INCLUDING CHANGING THE LOCKS WITHOUT A COURT ORDER.

We will refer to this document as an "abandonment notice."

The amended complaint alleged that, after Mr. Wheeling read the abandonment notice, he telephoned Selene on May 19, 2015. A representative of Selene told him that foreclosure proceedings had been initiated against the property, that Selene understood the property was abandoned because it was not owner-occupied, and that the Wheelings had to vacate the property by June 1, 2015, or else Selene would change the locks. However, the representative refused to provide any details of the alleged foreclosure proceedings to Mr. Wheeling because he was not the owner of the property. Additionally, the amended complaint alleged that neither Selene nor Normandy Mortgage had initiated foreclosure proceedings against Poole when the abandonment notice was posted and, indeed, never did so. According to the amended complaint, at the time that the abandonment notice was posted, Poole was negotiating with Selene for a short sale of the property and had been informed by Selene that her property was not subject to a foreclosure.

The amended complaint also alleged that, as a result of both the abandonment notice and the statements made by Selene's representative, the Wheelings suffered emotional distress and incurred attorney's fees by contacting an attorney to seek legal advice about their rights as tenants.

The amended complaint did not allege that the Wheelings vacated the home as a result of Selene's actions, nor did it allege that Selene took any steps other than posting the abandonment notice to force or induce them to move.

*The Rodriguez Claim*

The second property at issue in this appeal is located in Baltimore City and was owned by Joanne Rodriguez during the relevant period (the "Rodriguez property"). Rodriguez purchased the property in 2008 through a mortgage backed by a federal housing program. After she was unable to make timely payments, the loan went into default and was eventually transferred to Sunset Mortgage Loan Trust, Series 2014-1.

Selene, acting on behalf of Sunset Mortgage, filed a foreclosure action against the Rodriguez property. Sunset Mortgage was the successful bidder at the foreclosure auction and acquired the property for $42,000. The sale was ratified in September 2016.

In February 2017, Selene contracted with Century 21 Downtown, a real estate brokerage company operated by Gina Gargeu. Acting as Selene's agent, Gargeu scheduled a sheriff's eviction for the Rodriguez property on March 28, 2017. On February 10, the sheriff posted a notice on the property informing the occupants that they would be evicted pursuant to a court order on March 28, 2017.

A little less than two weeks later, on February 22, Gargeu posted an abandonment notice on the Rodriguez property that was identical to the notice posted on the Wheeling property, but for differences in names, addresses, and other incidental information. The amended complaint alleged that Rodriguez learned about the abandonment notice through her neighbor, Dermot Delude-Dix. After seeing the abandonment notice, Delude-Dix called Gargeu and told her that Rodriguez still occupied the property. Rodriguez also alleged that she consulted an attorney to learn about her rights. Despite the scheduled eviction date and the abandonment notice, Rodriguez was never evicted from the property. The amended complaint did not allege that Rodriguez vacated the home as a result of Selene's and Gargeu's actions, or that Selene or Gargeu took any steps other than posting the abandonment notice to force or induce them to move. The amended complaint alleged that Rodriguez, like the Wheelings, suffered emotional distress and incurred legal fees as a result of the posting of the abandonment notice.

*The Current Action*

On March 1, 2017, appellants filed a joint complaint in the Circuit Court for Baltimore City on behalf of themselves and a proposed class of persons similarly situated. On May 30, 2017, they filed an amended complaint. The amended complaint asserted two claims against Selene and Gargeu. First, the complaint alleged that Selene and Gargeu violated Real Prop. § 7-113(b) by making threats of eviction without first making a reasonable inquiry as to whether the properties were, in fact, abandoned. Second, the complaint alleged that Selene and Gargeu violated the MCPA by threatening to take possession of their properties by way of the abandonment notices. Appellants asked the court to certify their

5

claims as a class action, to grant declaratory and injunctive relief, and to award them monetary damages and attorneys' fees.[1]

Gargeu and Selene filed motions to dismiss the amended complaint for failure to state a cause of action.

On August 8, 2017, the circuit court held a hearing on the motions to dismiss. Selene and Gargeu argued that: (1) they were not liable under Real Prop. § 7-113 because the abandonment notices did not constitute a "threat" as defined in that statute; (2) the MCPA did not apply in this case because (a) the appellants are not "consumers" as defined in the MCPA, and (b) posting an abandonment notice on a residence is not a collection activity within the provisions of the MCPA; (3) Selene, as a licensed mortgage lender, was exempt from the provisions of the MCPA; and (4) appellants did not sufficiently plead damages in their complaint and could not show any accompanying physical manifestations of that distress.

Appellants responded that § 7-113 requires a party who posts an abandonment notice to first make a reasonable inquiry as to the occupancy status of the property, and that Selene and Gargeu failed to do this before posting the abandonment notices. Appellants pointed out that the amended complaint alleged that both properties were inhabited at the time the

---

[1] Appellants also filed a motion for partial summary judgment, requesting that the court find that "the threats of eviction on behalf of an unlicensed collection agency is not permitted under Maryland law." A hearing on that motion was held on July 19, 2017. At the conclusion of the hearing, the motions court held the case *sub curia* to reserve on ruling until after the hearing on the motions to dismiss. The motions were rendered moot when the circuit court granted the motions to dismiss the amended complaint.

6

abandonment notices were posted. For example, Rodriguez appeared at the foreclosure proceedings concerning her property, and so, as a result, Selene was on notice that the property was, in fact, occupied. The alleged failures by Selene and Gargeu to conduct reasonable inquiries, appellants argued, caused damages, and the case should go to the trier of fact to resolve these issues. Moreover, appellants asserted that Selene did not have a basis for posting the abandonment notice to the Wheeling property under Real Prop. § 7-113 because it did not qualify as a "party claiming possession" as defined in subsection (a) of that statute.

Appellants also elaborated on their claim for damages for emotional distress. They asserted that the MCPA allows for non-economic damages, and their counsel told the court that:

> [W]e've pled physical manifestations, what's required under Maryland law is reasonable objectifiable information. And we've provided multiple characteristics of the physical manifestation. At this stage, that's all that's sufficient for notice pleading for actual damages. We've also pled that each Plaintiff's incurred expense to make legal inquiries as to what their rights were. I mean that's an economic damage. . . . But in any event, we've pled proper damages.

On December 4, 2017, the circuit court granted both motions to dismiss without leave to amend. The court concluded that the abandonment notices posted by Selene and Gargeu conformed with the provisions of Real Prop. § 7-113. As to Selene, the court concluded that the amended complaint failed to allege sufficient facts which state a claim upon which relief can be granted because appellants were not evicted or otherwise deprived of their property, and so did not suffer an objectively identifiable actual injury. As to Gargeu, the

7

court concluded the MCPA did not apply to her because Com. Law § 13-104 exempts real estate brokers from the provisions of the MCPA.[2]

This timely appeal followed.

## Analysis

Under Md. Rule 2-322(b)(2), the court may dismiss a complaint if it fails "to state a claim upon which relief can be granted." A motion to dismiss is properly granted if the factual allegations in a complaint, if proven, would not provide a legally sufficient basis for the cause of action asserted in the complaint. Md. Rule 2-322(b)(2). "Dismissal is proper only if the alleged facts and permissible inferences, so viewed, would, if proven,

---

[2] The court's ruling as to the MCPA's application to Gargeu was superfluous. The MCPA claim in the amended complaint explicitly stated that it applied only to Selene. In their brief submitted to this Court, appellants' MCPA arguments are again directed only at Selene. For reasons that aren't clear from the record, the circuit court nonetheless stated in its order dismissing appellants' MCPA claims that the MCPA does not apply to Gargeu by virtue of her profession as a real estate broker. *See* Com. Law § 13-104(1) ("This title does not apply to . . . [t]he professional services of a real estate broker, associate real estate broker, or real estate salesperson . . . .").

To the extent that appellants do assert an MCPA claim against Gargeu, the court's ruling has not been challenged on appeal. With that said, the circuit court's application of the categorial exemption to real estate brokers from the MCPA without further analysis may be problematic under the facts alleged in the amended complaint. *See Andrews & Lawrence Professional Services, LLC v. Mills*, 467 Md. 126, 156 (2020) (In deciding whether Com. Law § 13-104(1)'s exemption to "lawyers" applied to the activities of the law firm at issue in the case, the Court distinguished between services that require a professional license, which are exempt, from those that were performed by the law firm but may also "be performed by any collection agency," which are not.) For the purposes of our analysis, we need not address whether a license as a real estate broker or associate broker is required to post an abandonment notice.

8

nonetheless fail to afford relief to the plaintiff." *Allied Investment Corp. v. Jasen*, 354 Md. 547, 555 (1999) (cleaned up).

When reviewing a motion to dismiss a complaint for failure to state a cause of action, we "assume the truth of all well-pleaded facts and allegations in the complaint, as well as all inferences that can reasonably be drawn from them." *O'Brien & Gere Engineers, Inc. v. City of Salisbury*, 447 Md. 394, 404 (2016) (internal quotation marks omitted). Further, we view all well-pleaded facts and the inferences from those facts in a light most favorable to the plaintiff. *Davis v. Frostburg Facility Operations, LLC*, 457 Md. 275, 284 (2018).

1. The Real Prop. § 7-113 Claims

*A. The Statute*

Appellants assert that Selene and Gargeu violated the provisions of Real Prop. § 7-113 and that the cause of action established in subsection (d) of the statute provides them with a remedy. We agree, but only in part. As we will explain, the allegations in the amended complaint, if proven, show that Selene and Gargeu violated § 7-113. But the scope of the statutory remedy is not as broad as appellants contend.

Our analysis starts with the statute. Section 7-113 states, in pertinent part (emphasis added):

> (a)(1) In this section the following words have the meanings indicated.
>> (2) "Party claiming the right to possession" means a person or successor to any person who:
>>> (i) Does not have actual possession of a residential property; and
>>> (ii) Has or claims to have a legal right to possession of the residential property:
>>>> 1. By the terms of a contract or foreclosure sale;

* * *

(3)(i) "Protected resident" means an owner or former owner in actual possession of residential property.

(ii) "Protected resident" includes a grantee, tenant, subtenant, or other person in actual possession by, through, or under an owner or former owner of residential property.

* * *

(5) "Threaten to take possession" means using words or actions intended to convince a reasonable person that a party claiming the right to possession intends to take imminent possession of residential property in violation of this section.

* * *

(b)(1) *Except as provided in paragraph (2) of this subsection, a party claiming the right to possession may not take possession or threaten to take possession of residential property from a protected resident by*:

(i) Locking the resident out of the residential property;

(ii) Engaging in willful diminution of services to the protected resident; or

(iii) *Taking any other action that deprives the protected resident of actual possession.*

(2)(i) Except as provided in subparagraph (ii) of this paragraph, a party claiming the right to possession may take possession of residential property from a protected resident only in accordance with a writ of possession issued by a court and executed by a sheriff or constable.

(ii) A party claiming the right to possession of residential property may use nonjudicial self-help to take possession of the property, if the party:

1. Reasonably believes the protected resident has abandoned or surrendered possession of the property *based on a reasonable inquiry into the occupancy status of the property*;

2. Provides notice as provided in subsection (c) of this section; and

3. Receives no responsive communication to that notice within 15 days after the later of posting or mailing the notice as required by subsection (c) of this section.

(c)(1) If a party claiming the right to possession of residential property *reasonably believes, based on a reasonable inquiry into the occupancy status of the property*, that all protected residents have abandoned or surrendered possession of the residential property, the party claiming the right to

possession may post on the front door of the residential property and mail by first-class mail addressed to "all occupants" at the address of the residential property a written notice in substantially the following form:

"IMPORTANT NOTICE ABOUT EVICTION

A person who claims the right to possess this property believes that this property is abandoned. If you are currently residing in the property, you must immediately contact:

_____
Name

_____
Address

_____
Telephone

_____
Date of this notice

If you do not contact the person listed above within 15 days after the date of this notice, the person claiming possession may consider the property abandoned and seek to secure the property, including changing the locks without a court order.".

\* \* \*

(d)(1) If in any proceeding the court finds that a party claiming the right to possession violated subsection (b) of this section, the protected resident may recover:

(i) Possession of the property, if no other person then resides in the property;

(ii) Actual damages; and

(iii) Reasonable attorney's fees and costs.

(2) The remedies set forth in this subsection are not exclusive.

(e) This section does not apply if the parties are governed by Title 8, Subtitle 2, or Title 8A of this article.[3]

Real Prop. § 7-113 was enacted by 2013 Maryland Laws Ch. 514, § 1 (S.B. 642, eff.

---

[3] Title 8, Subtitle 2 of the Real Property Article pertains to residential leases. Title 8A is concerned with leases in mobile home parks.

June 1, 2013).[4]

The legislative history indicates that the statute was a direct response to the holding of the Court of Appeals in *Nickens v. Mount Vernon Realty Group*, 429 Md. 53 (2012). *See* Fiscal and Policy Note for S.B. 642 (2013 Session). The property at issue in *Nickens* was sold in a foreclosure sale. 429 Md. at 59. The purchaser hired Mount Vernon to act as the property manager for the property. *Id*. In that capacity, Mount Vernon told Nickens, who was living on the property, that it intended to enter the property and remove his possessions unless he moved out. *Id*. Nickens did not vacate, and, while he was away, Mount Vernon

---

[4] The title to Chapter 514 states that the statute was enacted:

> for the purpose of prohibiting a party claiming the right to possession from taking possession or threatening to take possession of residential property from a certain protected resident in a certain manner[, and] prohibiting a landlord from taking possession or threatening to take possession of a dwelling unit from a tenant or tenant holding over in a certain manner . . . .

Although uncodified, "the title of an act is relevant to ascertainment of its intent and purpose[.]" *Yonga v. State*, 221 Md. App. 45, 63 (2015), *aff'd*, 446 Md. 183 (2016), *superseded by statute as noted in State v. Smith,* 244 Md. App. 354, 376 n.5 (2020) (quoting *MTA v Baltimore County Revenue Auth*., 267 Md. 687, 695–96 (1973).

The Maryland Constitution requires that every law enacted by the General Assembly include a descriptive title. Maryland Constitution Art. III, § 29. Among the functions of a title are advising the legislature and the public of the subject matter and the purpose of the proposed legislation. Dan Friedman, *The Maryland State Constitution A Reference Guide* 106–10 (2006) (citing, among other cases, *Originz v. James*, 309 Md. 381, 398 (1987) and *Allied Am. Mutual Fire Ins. Co. v. Commissioner of Motor Vehicles*, 219 Md. 607, 614–15 (1959)). *See also Commissioners of Carroll County v. Stephans,* 286 Md. 384, 395 (1979), *abrogated on other grounds by Maryland Overpak Corp. v. Mayor and City Council of Baltimore*, 395 Md. 16 (2006) (The purpose of Article III § 29 "is to inform the members of the General Assembly and the public of the nature of the proposed legislation.")

entered the property, changed the locks, disposed of Nickens's possessions, and posted a "No Trespassing" sign. *Id*. at 59–60.

The Court of Appeals affirmed Mount Vernon's use of the common-law remedy of self-help and held that doing so was reasonable in light of the circumstances. *Id*. at 62. Tracing the origins of the self-help remedy and its development in Maryland, the Court reasoned that "even if no notice was given, we hold that notice is not required in order to exercise peaceable self-help" because doing so "is entirely compatible with a desire to avoid a confrontation possibly leading to violence." *Id*. at 72–73.

In response to the Court's holding in *Nickens*, the General Assembly passed § 7-113 which significantly limited the scope of self-help in situations involving residential properties. Under § 7-113, the general rule is that "possession may only be taken from a protected resident in accordance with a writ of possession issued by a court and executed by a sheriff or constable . . . ." Fiscal and Policy Note for S.B. 642 (2013 Session). However, the statute contains an exception: a party seeking possession of a property that appears to be abandoned may do so after reasonable inquiry and posting the prescribed notice.

## B. The Parties' Contentions

Against this backdrop, appellants present two arguments as to why the circuit court erred in dismissing their claim under Real Prop. § 7-113. Their arguments begin with the

13

premise that both the Wheelings and Rodriguez are "protected residents" for the purposes of § 7-113. Selene and Gargeu did not assert to the contrary.[5]

Appellants claim that Selene does not qualify as a "party claiming possession" as that term is defined in § 7-113(a)(2) as to the Wheeling property because neither Selene nor Normandy Mortgage filed a foreclosure action, obtained a court order granting possession, or had a contractual right to possess the property. For that reason, Selene had no right to utilize the self-help provisions of § 7-113 to take possession of the Wheeling property.

Moreover, appellants argue that Selene and Gargeu violated Real Prop. § 7-113(b) by posting the abandonment notices without first conducting reasonable inquiries as to whether either property was occupied. According to appellants' reading of the statute, conducting a reasonable inquiry into the occupancy status of a residential property is a prerequisite to posting an abandonment notice, and the failure of a party claiming the right of possession to do so gives rise to a cause of action under subsection (d). Appellants point to factual allegations in their complaint showing that no reasonable inquiry was conducted, such as the fact that the owners of both properties had been in contact with Selene during the time the abandonment notices were posted. Further, appellants maintain that the mere posting the notice itself "cannot substitute for or supplant the requisite inquiry." Appellants

---

[5] The Wheelings claim protected-resident status because they leased the property from its owner, Poole, and were occupying it. Rodriguez asserts that she is a protected resident because she was the owner of her property and was in actual possession of it at the time that the abandonment notice was posted.

acknowledge that the abandonment notices otherwise conformed with the requirements of Real Prop. § 7-113(c)(1).

Selene and Gargeu present two arguments in response.[6] First, they assert that Real Prop. § 7-113 provides no avenue of relief for appellants. They characterize appellants' amended complaint as stating a claim under subsection (c) of Real Prop. § 7-113, and not subsection (b) of that statute. Selene and Gargeu do not deny that remedies are available in Real Prop. § 7-113 through subsection (d). However, according to them, the subsection (d) remedies are available only to persons injured when the party seeking possession actually locks a protected resident out, actually willfully diminishes services to the resident, or actually takes "any other action to deprive the protected resident of actual possession." *See* § 7-113(b)(i)–(iii). Selene and Gargeu contend that, because the amended complaint does not allege that any of these occurred with regard to appellants, they are not entitled to any relief under subsection (d).[7]

### C. The Proper Interpretation of Section 7-113

The parties' contentions require us to engage in a statutory analysis of § 7-113. Statutory construction involves:

> an examination of the statutory text in context, a review of legislative history to confirm conclusions or resolve questions from that examination, and a

---

[6] Selene and Gargeu filed separate briefs on appeal, but they make similar arguments as to the issues and have incorporated one another's arguments in their briefs.

[7] Appellees also contend that appellants did not plead facts which showed that they suffered actual injuries. It isn't necessary for us to address this contention in the context of Real Prop. § 7-113.

consideration of the consequences of alternative readings. "Text is the plain language of the relevant provision, typically given its ordinary meaning, viewed in context, considered in light of the whole statute, and generally evaluated for ambiguity. Legislative purpose, either apparent from the text or gathered from external sources, often informs, if not controls, our reading of the statute. An examination of interpretive consequences, either as a comparison of the results of each proffered construction, or as a principle of avoidance of an absurd or unreasonable reading, grounds the court's interpretation in reality."

*Blue v. Prince George's County*, 434 Md. 681, 689 (2013) (quoting *Town of Oxford v. Koste*, 204 Md. App. 578, 585–86 (2012), *aff'd*, 431 Md. 14 (2013)).

The prime directive to those who engage in statutory construction is "'to ascertain and effectuate the legislative intention.'" *McKay v. Department of Public Safety*, 150 Md. App. 182, 193 (2003) (quoting *Mayor & City Council of Baltimore v. Chase*, 360 Md. 121, 128 (2000)). "The overarching rule is that, in construing statutes, 'our primary goal is always 'to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision . . . .'" *Opert v. Criminal Injuries Compensation Board*, 403 Md. 587, 593 (2008) (quoting *Barbre v. Pope*, 402 Md. 157, 172 (2007)).

The Court of Appeals has recently provided us with a concise framework for conducting a statutory construction analysis:

[W]e begin with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology. When the words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia. Moreover, after determining a statute is ambiguous, we consider the common meaning and effect of statutory language in light of the objectives and purpose of the statute and Legislative intent.

16

> Even in instances when the language is unambiguous, it is useful to review legislative history of the statute to confirm that interpretation and to eliminate another version of legislative intent alleged to be latent in the language.

*Blackstone v. Sharma*, 461 Md. 87, 113 (2018) (cleaned up).

As we have explained, Selene and Gargeu do not dispute that a cause of action exists for violations of Real Prop. § 7-113. However, they assert that the cause of action established in subsection (d) applies only in cases in which the party seeking possession locks the resident out of the property, terminates utilities or other services to the resident, or otherwise takes "any other action that deprives the protected resident of actual possession." Although we do not fully agree with appellees' reading of the statute, we conclude that the cause of action established by subsection (d) does not apply in this case. Explaining why requires us to look more closely at subsections (b), (c), and (d) of the statute to discern the ways that the General Assembly intended these provisions to work together.

In our view, subsection (b) of § 7-113 serves two purposes. First, it sets out the general rule that a party claiming possession of a residential property may only do so by means of a writ of possession issued by a court and served by a sheriff or constable. *See* Real Prop. § 7-113(b)(2)(i). In furtherance of that end, subsection (b) prohibits a party claiming a right to possession from taking possession or threatening to take possession by committing any one of three enumerated acts: "locking the resident out of the residential property; engaging in willful diminution of services to the protected resident; or taking any other action that deprives the protected resident of actual possession." Real Prop. § 7-113(b)(1). This part of subsection (b) appears to be directed at the Court of Appeals' holding in *Nickens.*

17

Second, subsection (b) carves out a limited exception to the requirement that possession can only be acquired through a court-issued writ of possession. Subsection (b)(2)(ii) sets out a means for a party claiming possession of a residential property to acquire possession through nonjudicial self-help if the property is abandoned. Specifically, a party claiming possession may use self-help if the party (emphasis added):

> 1. *Reasonably believes* the protected resident has abandoned or surrendered possession of the property *based on a reasonable inquiry into the occupancy status of the property*;
>
> 2. Provides notice as provided in subsection (c) of this section; and
>
> 3. Receives no responsive communication to that notice within 15 days after the later of posting or mailing the notice as required by subsection (c) of this section."

Real Prop. § 7-113(b)(2)(ii).

The legislative intent is made clearer still in subsection (c), which reiterates the requirement that self-help is available only after reasonable inquiry.[8]

From this, we conclude what is obvious: it was the intent of the General Assembly that the first step in the posting process is a reasonable inquiry by the party seeking possession

---

[8] Subsection (c) requires that (emphasis added):

> If a party claiming the right to possession of residential property *reasonably believes, based on a reasonable inquiry into the occupancy status of the property*, that all protected residents have abandoned or surrendered possession of the residential property, the party claiming the right to possession may post on the front door of the residential property and mail by first-class mail addressed to "all occupants" at the address of the residential property a written notice in substantially the following form . . . .

Real Prop. § 7-113(c)(1).

18

as to the occupancy status of the property. If, based on that inquiry, the party reasonably believes the property is abandoned, the party may post the notice. Because this is an exception to the general rule prohibiting self-help, we assume that the General Assembly intended that the exception's requirements be strictly adhered to. *See Arthur E. Selnick Associates, Inc. v. Howard County*, 206 Md. App. 667, 694 (2012) ("A court may not as a general rule surmise a legislative intention contrary to the plain language of a statute or insert exceptions not made by the legislature." (cleaned up)); *see also Lee v. Cline*, 384 Md. 245, 256 (2004) (The Court of Appeals "has been most reluctant to recognize exceptions in a statute when there is no basis for the exceptions in the statutory language.").

Implicit in Selene's and Gargeu's arguments regarding § 7-113 is the notion that subsections (b) and (c) should be read in isolation from one another. We do not agree. Subsection (b) provides a limited right of self-help in certain circumstances and subsection (c) sets out what a party seeking possession must do to exercise that right. Subsection (b) explicitly refers to subsection (c), and the two subsections dovetail exactly. Were we to cabin the two sections from one another, we would ignore a fundamental principle of statutory construction, namely, to read "the statutory text in context." *Blue*, 434 Md. at 689.

Moreover, subsection (b)(2)(ii)(1) unquestionably mandates that, before a person claiming possession may resort to nonjudicial self-help by posting notice under subsection (c), the person *must* make "a reasonable inquiry into the occupancy status of the property," in addition to the other two requirements listed. That making a reasonable inquiry is a prerequisite to lawfully engaging in self-help demonstrates that a party who fails to do so before posting an abandonment notice violates § 7-113(b). To conclude otherwise would

19

turn the reasonable-inquiry requirement into meaningless surplusage. So, while it is true that, other than posting the abandonment notices, neither Selene nor Gargeu took steps to dispossess the Wheelings or Rodriguez, they did not need to do so to violate Section 7-113(b). This comports with the General Assembly's intent in enacting Section 7-113 as a response to *Nickens* to limit a foreclosure purchaser's ability to engage in self-help. Therefore, it is clear to us that a party claiming a right of possession violates subsection (b) by posting an abandonment notice without first making a reasonable inquiry into the status of the property.[9]

This brings us to the crux of Selene's and Gargeu's § 7-113 argument, namely, that the cause of action established in subsection (d) does not extend to them in this case because they did not actually lock any of the appellants out of their residences, actually diminish services to appellants, or otherwise take "any other action to deprive [appellants] of actual

---

[9] That leaves us with the Wheelings' alternative contention that it was inappropriate for Selene to attempt to use the provisions of Real Prop. § 7-113 to obtain possession of the property that they were renting because Selene was not a "party claiming the right of possession" as defined in that statute. We agree with the Wheelings.

In relevant part, § 7-113(a)(2) defines a "party claiming the right of possession" as a party not in actual possession of the property, but who has a legal right to possess the property because of the terms of foreclosure proceeding. According to the amended complaint, Selene did not satisfy this requirement for the simple reason that no foreclosure was ever filed against the Wheeling property.

It is true that § 7-113 does not address whether it applies to an entity (such as Selene in the present case) that is not a party claiming the right of possession (as that term is defined in § 7-113(a)(2)) but nevertheless seeks to use subsections (b) and (c) to gain possession of the property. This question is an academic one in this appeal because Selene concedes that Real Prop. § 7-113 applies to it.

possession." *See* § 7-113(b)(i)–(iii). Appellees' proffered interpretation of subsection (d) is not quite consistent with the plain language of the statute. Subsection (d) establishes a remedy for violations of "subsection (b)" and not only for violations of "subsection (b)(1)."

Although subsection (d) applies to violations of subsection (b), the remedies available pursuant to subsection (d) suggest that the General Assembly intended to restrict the scope of the statutory cause of action. Subsection (d) provides that a protected resident is limited to recovering "[p]ossession of the property, if no other person then resides in the property; [a]ctual damages; *and* [r]easonable attorney's fees and costs." (emphasis added). The use of the conjunctive "and"—as opposed to "or"—is an indicator that the General Assembly intended the cause of action for the purpose of regaining *possession* of the property *in addition to* actual damages and attorney's fees. *See SVF Riva Annapolis LLC v. Gilroy*, 459 Md. 632, 642 (2018) (Indicating that "'and' is a conjunction meaning together with or along with; in addition to; as well as used to connect words, phrases, or clauses that have the same grammatical function in a construction" but that "'or' is a conjunction used to indicate an alternative, usually only before the last term of a series." (cleaned up)).

Moreover, when, as in the present case, a statute confers a right in derogation of the common law, we must strictly construe its terms. *Cosby v. Dept. of Human Resources*, 425 Md. 629, 645 (2012). Maryland courts have followed this principle for nearly a century. *See, e.g.*, *Breslin v. Powell*, 421 Md. 266, 287 (2011) ("[S]tatutes in derogation of the common law are strictly construed, and it is not to be presumed that the [L]egislature . . . intended to make any alteration in the common law other than what has been specified and

21

plainly pronounced.'" (quoting *Walzer v. Osborne*, 395 Md. 563, 573–74 (2006)); *State, for the Use of Dunnigan v. Cobourn*, 171 Md. 23 (1936).

As we discussed above, Real Prop. § 7-113 was enacted in derogation of the common law. *See* Fiscal and Policy Note for S.B. 642 (2013 Session) (explaining that § 7-113 was enacted as a direct response to the Court of Appeals' holding in *Nickens* explaining the common law right of self-help). As a result, we construe the language of subsection (d) strictly so as not to expand the cause of action provided for by the General Assembly. *See also Walzer*, 395 Md. at 572 ("We neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words the Legislature used or engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning.").

In summary, we believe that the plain language of § 7-113(d) indicates that the cause of action established by the statute is limited to cases in which the party seeking possession locks a protected person out of the property, intentionally terminates or diminishes utility, water and sewer and similar services to the property, or takes "any other action" which deprives a protected resident of actual possession of the property. "Any other action" could include posting an abandonment notice without first conducting the "reasonable inquiry" required by subsections (b) and (c) of § 7-113 *if*, as a result of abandonment notice, the protected person vacates the property. The statutory cause of action does not extend to persons, like appellants, who did not vacate their properties even if the parties seeking possession violated § 7-113(b) and (c) by not making the required inquiry before posting.

Real Prop. § 7-113(d) provides that the "remedies set forth in this subsection are not exclusive." This brings us to appellants' alternative theory of relief, namely, that the

22

amended complaint sets out a private cause of action pursuant to the Maryland Consumer Protection Act. We will assume for the purposes of analysis that one or more aspects of Selene's alleged behavior constituted a violation of the MCPA. However, as we will explain, the amended complaint nonetheless fails as a matter of law.

## 2. Pleading Damages

The amended complaint alleged that the Wheelings "incur[red] legal fees to know their rights as bona fide tenants based on Selene's unfair and false statements[, and] emotional damages and losses with physical manifestations such as fear (of losing their home), anxiety (with the threat of eviction through no fault of their own), anger, (that Selene could not answer basi[c] questions to them as bona fide tenants), etc." As to Rodriguez, the complaint alleged that she "incurred legal fees to know her rights as a former owner of the property based on Selene's and Gargeu's deceptive eviction threats," and that she suffered "emotional damages and losses with physical manifestations such as fear, anxiety, and anger that she would return from a medical or other appointment to find her possessions and property taken from her before the date established by the Sheriff's office[.]" Appellants assert that these allegations are legally sufficient to support their § 7-113 and their MCPA claims.

Selene argues that these allegations are inadequate as a matter of law to support a private cause of action for an alleged violation of the MCPA. For reasons that we will explain, Selene is correct. (Additionally, in its brief, Selene has adopted the arguments presented by Gargeu, which we set out below.)

For her part, Gargeu presents several contentions as to why the amended complaint failed to adequately plead damages. Some of her arguments on this score consist of assertions that, because she didn't violate § 7-113, it is impossible for appellants to allege that they were damaged by her actions. Those arguments fail for the reasons that we have explained in part 1 of this opinion. This leaves us with her argument that:

> Finally, with respect to the emotional distress damages asserted by Ms. Rodriguez in the amended complaint, the same are untenable. Under Maryland law, recovery for emotional distress may be had if the injury is objectively ascertainable and is shown to be a provable consequence of the wrongful conduct. *Hoffman v. Stamper*, 385 Md. 1, 34 (2005), citing *Vance v. Vance*, 286 Md. 490, 498 (1979). There of course remains the concern that mental distress may be too easily simulated and there is no practical standard for measuring such distress. As such, recovery for emotional injury is not allowed based on the plaintiff simply saying, "This made me feel bad; this upset me." There must be at least a consequential physical injury, considered a "sufficient guarantee of genuineness that would otherwise be absent in a claim for mental distress alone." *Vance*, 286 Md. at 498.

Although our reasoning differs a bit from Gargeu's, we ultimately reach her desired result.

Md. Rule 2-203(b) states the general rule (emphasis added):

> Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleadings are required. *A pleading shall contain only such statements of fact as may be necessary to show the pleader's entitlement to relief or ground of defense*. It shall not include argument, unnecessary recitals of law, evidence, or documents, or any immaterial, impertinent, or scandalous matter.

In *Lloyd v. General Motors Corp.*, 397 Md. 108 (2007), the Court explained:

> [I]n determining whether a petitioner has alleged claims upon which relief can be granted, *there is . . . a big difference between that which is necessary to prove the commission of a tort and that which is necessary merely to allege its commission,* and, when that is the issue, the court's decision does not pass

24

on the merits of the claims; it merely determines the plaintiff's right to bring the action.

*Id.* at 121–22 (emphasis added) (cleaned up); *see also Pulte Home Corp. v. Parex, Inc.*, 174 Md. App. 681, 725–26 (2007) ("Pulte was not, at the pleading stage, required to make an evidentiary 'showing' that there was an express warranty. Pulte *was*, however, required to set forth an 'averment' that was 'simple, concise, and direct,' and that contained 'such statements of fact as may [have been] necessary to show the pleader's entitlement to relief[.]"), *aff'd*, 403 Md. 367 (2008) (emphasis in original); *B & P Enterprises v. Overland Equipment Co.*, 133 Md. App. 583, 621 (2000) ("Under our liberal rules of pleading, a plaintiff need only state such facts in his or her complaint as are necessary to show an entitlement to relief." (cleaned up)).

This is the general rule. Were it applicable to the causes of action at play in the present appeal, the amended complaint's sparse allegations as to the nature of appellants' damages might suffice. However, as we will now explain, the Court of Appeals has imposed a more demanding standard for pleading damages in private actions brought under the MCPA. The requirements of this standard are particularly relevant in cases, like the present one, that involve claims for emotional distress.

Com. Law § 13–201 "establishes the Division of Consumer Protection in the Office of the Attorney General, charging the Division with the duty to administer the Consumer Protection Act." The Division has the power and the duty to receive and investigate complaints and to initiate an investigation of any unfair and deceptive trade practice. *Consumer Protection Division v. Morgan*, 387 Md. 125, 149 (2005). In addition to the

broad enforcement powers wielded by the Consumer Protection Division, the MCPA also provides that a person "may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by this title." Com. Law. § 13-408(a). If the party successfully recovers damages for loss or injury at trial, it may also seek reasonable attorney's fees. Com. Law § 13-408(b).

Maryland's appellate courts have held that, to prevail in a private action pursuant to § 13-408, a plaintiff must prove "actual injury or loss." *Lloyd v. GMC*, 397 Md. 108, 143 (2007) (quoting *CitaraManis v. Hallowell*, 328 Md. 142, 153 (1992)); *McGraw v. Loyola Ford*, 124 Md. App. 560, 581 (1999)). As the Court explained in *Lloyd*:

> We have . . . established that, in order to articulate a cognizable injury under the Consumer Protection Act, the injury must be objectively identifiable. In other words, the consumer must have suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation.

397 Md. at 143. A party's "failure to 'establish the nature of the actual injury or loss that [a consumer] has allegedly sustained as a result of the prohibited practice' is fatal to a private cause of action under the Act." *McGraw*, 124 Md. App. at 581 (1999) (quoting *CitaraManis*, 328 Md. at 152).

In *Lloyd*, the Court made it clear that the requirement to demonstrate "actual injury or loss" was not only a requirement of *proof*, but also of *pleading* (emphasis added):

> [In *CitaraManis*] [w]e further elucidated that, under the Consumer Protection Act a party may pursue a public remedy, by filing a claim with the Attorney General, a private remedy, by filing a private cause of action, or both. We noted, however, that there is a difference between the two options with regard to the necessity of *pleading* injury or harm:

26

Notwithstanding the availability of both public and private remedies to consumers, the Legislature has established a clear distinction between the elements necessary to maintain a public enforcement proceeding versus a private enforcement proceeding. In a public enforcement proceeding any practice prohibited by this title is a violation . . . whether or not any consumer in fact has been misled, deceived, or damaged as a result of that practice." § 13–302. In contrast, a private enforcement proceeding pursuant to § 13–408(a) expressly only permits a consumer "to recover for injury or loss sustained by him as the result of a practice prohibited by this title." § 13–408(a). *Section 13–408(a), therefore, requires an aggrieved consumer to establish the nature of the actual injury or loss that he or she has allegedly sustained as a result of the prohibited practice.* This statutory construction creates a bright line distinction between the public enforcement remedies available under the CPA and the private remedy available under § 13–408(a).

*Id.* at 147–48 (quoting *CitaraManis*, 328 Md. at 147–48).

The *Lloyd* Court explained the policy basis for its holding (emphasis added):

The requirement that parties *plead* actual injury or harm in a private cause of action under the Consumer Protection Act:

"is said to prevent aggressive consumers who were not personally harmed by the prohibited conduct, or even involved in a transaction with the offending businessman, from instituting suit 'as self-constituted private attorneys general' over relatively minor statutory violations. Another fear is that the powerful weapon given to consumers in the form of the private remedy 'was capable of being used improperly for harassment and improper coercive tactics.'"

[*CitaraManis*, 328 Md. at 153] (quoting 1 H. Alperin & R. Chase, *Consumer Law: Sales Practices And Credit Regulation* § 136 at 193).

We acknowledged the differing interests sought to be promoted by the public and private enforcement proceedings.

"[T]he CPA's public enforcement mechanisms are set up to prevent potentially unfair or deceptive trade practices from occurring, even before any consumer is injured, whereas § 13–408(a) requires that actual 'injury or loss' be sustained by a consumer before recovery of damages is permitted in a private cause of action. A construction of the

27

CPA that would establish § 13–302 as a benchmark to determine whether a consumer has sustained 'injury or loss' within the meaning of § 13–408(a) is both strained and illogical."

[*CitaraManis*, 328 Md. at 153] quoting Comment, *Maryland's Consumer Protection Act: A Private Cause of Action for Unfair or Deceptive Trade Practices*, 38 Md. Law Rev. 733, 739 n. 50 (1979).

397 Md. at 148–49.

Moreover, in private actions brought under the MCPA involving claims of emotional distress, the Court of Appeals has long required that such claims "must be capable of objective determination." As Judge Ellen Lipton Hollander explained (emphasis added):

The Maryland Court of Appeals has held that "noneconomic damages," which include damages for pain and suffering, are available under the CPA, up to the limits established by Courts and Judicial Proceedings § 11–108, Maryland's statutory cap on noneconomic damages for personal injury. As the Maryland court explained in the CPA case of *Hoffman v. Stamper*, *supra*, 385 Md. [1] at 32–38 [(2005)], Maryland adheres to the so-called "modern rule" articulated in *Vance v. Vance*, 286 Md. 490 (1979), which permits "recovery of damages for emotional distress if there was at least a 'consequential' physical injury," in the sense that "'the injury for which recovery is sought is capable of objective determination.'" *Hoffman*, 385 Md. at 34 (quoting *Vance*). This "physical" injury standard permits recovery for "such things as depression, inability to work or perform routine household chores, loss of appetite, insomnia, nightmares, loss of weight, extreme nervousness and irritability, withdrawal from socialization, fainting, chest pains, headaches, and upset stomachs," *id*. at 34–35, *but excludes recovery "based on the plaintiff simply saying, 'This made me feel bad; this upset me.'"*

*Sager v. Housing Commission of Anne Arundel County*, 855 F. Supp. 2d 524, 548–49 (D. Md. 2012) (some citations omitted).

Returning to the case before us, the amended complaint does not allege that appellants manifested any observable physical manifestations of the emotional distress caused by Selene. Rather, and we mean no disrespect to appellants, the allegations regarding

28

emotional distress amount to nothing more than assertions that Selene's actions upset them. The MPCA requires more in order for a complaint to survive a motion to dismiss for failure to state a cause of action. This result doesn't change because appellants also alleged that they contacted attorneys for advice as to their rights after learning of the notices. If, for the purposes of a private action under the MCPA, attorney's fees incurred for such purposes were enough to satisfy Com. Law § 13-408(a)'s requirement that a plaintiff demonstrate an "injury or loss sustained" as the result of the violation of the statute, the limitations imposed by *Lloyd*, *CitaraManis* and other decisions would be rendered meaningless.

**THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY IS AFFIRMED. APPELLANTS TO PAY COSTS.**

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/2128s17cn.pdf